MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
Timothy J. Ohms
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
DEC 14 2016
SEAN F. McAVOY, CLERK
DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MELVIN THOMAS NEIFERT,

Defendant.

1:16-CR-02062-SMJ

Plea Agreement

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney, for the Eastern District of Washington, and Timothy J. Ohms, Assistant United States Attorney for the Eastern District of Washington, and Defendant MELVIN THOMAS NEIFERT and the Defendant's counsel, Jeremy B. Sporn, agree to the following Plea Agreement:

1) Guilty Plea and Maximum Statutory Penalties:

The Defendant, MELVIN THOMAS NEIFERT, agrees to plead guilty to the Indictment filed on August 17, 2016, charging the Defendant with Receipt of an Explosive in Interstate Commerce with Intent to Intimidate, in violation of 18 U.S.C. § 844(d), (j). The Defendant, MELVIN THOMAS NEIFERT, understands that the charge contained in the Indictment is a Class C Felony. The Defendant also understands that the maximum statutory penalty for Receipt of an Explosive in Interstate Commerce with Intent to Intimidate, in violation of 18 U.S.C. § 844(d), (j),

is not more than 10 years imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than 3 years; and a $100 special penalty assessment.

The Defendant, MELVIN THOMAS NEIFERT, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2) The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3) Waiver of Constitutional Rights:

The Defendant, MELVIN THOMAS NEIFERT, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

a) The right to a jury trial;

b) The right to see, hear and question the witnesses;

c) The right to remain silent at trial;

d) The right to testify at trial; and

e) The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4) Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Receipt of an Explosive in Interstate Commerce with Intent to Intimidate, in violation of 18 U.S.C. § 844(d), (j), the United States would have to prove beyond a reasonable doubt the following elements:

a) First, on or about between February 21, 2016, and May 1, 2016, the Defendant, MELVIN THOMAS NEIFERT, received components for an incendiary-explosive device consisting of a nitrate explosive mixture;

b) Second, the components had previously traveled in interstate or foreign commerce; and

c) Third, the Defendant intended that the incendiary-explosive device would be used to intimidate another person.

5) Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for MELVIN THOMAS NEIFERT 's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to

the guideline computation or sentencing, unless otherwise prohibited in this agreement.

In February of 2016, federal authorities developed information that the Defendant, MELVIN THOMAS NEIFERT, was stockpiling and experimenting with materials that could be mixed together to manufacture explosives. These materials included powders, ammonium nitrate, and sugar. The Defendant had recently traveled to Seattle to protest and march against local white supremacists. The Defendant told others that he had become tired of anarchists discussing direct action but never taking the next step and engaging in direct action. The Defendant indicated to others that he was planning to take some kind of "direct action" during the next May Day protest in Seattle.

In March of 2016, federal authorities confirmed through people acquainted with the Defendant that the Defendant had begun stockpiling chemicals such as ammonium nitrate and magnesium shavings and that he cut open cardboard tubes originally designed for rocketry in an attempt to access the black powder inside. The Defendant was also cooking potassium nitrate and sugar together to make small pink pellets, which the Defendant then tried to light.

Federal authorities developed a confidential source of information who engaged the Defendant in recorded conversations on March 8 and 31, 2016.

When contacted on March 8, 2016, the Defendant was watching a video on his cellular telephone on how to construct exploding arrows. The Defendant then pointed out some chemicals that he had in his bedroom, including ammonium nitrate and potassium nitrate. The Defendant then said, "I need to get fuses. That's what I need to get because I want to make the smoke bombs." The Defendant went on to discuss the construction of smoke bombs, saying "you could have the wick sticking out of this and then when-then-(laughs) and then when you light it, yeah it should go (sound effect) shoots smoke right out, assuming it doesn't explode." The Defendant explained that he intended to use the smoke grenades during the May Day protest, stating that

"the second they start launching their, you know, their grenades at us, we're just going to start lobbing them back maybe. And then they would—which would be a big surprise to the cops because they wouldn't expect that." The Defendant continued to discuss his plans for May Day, and said: "We're all going to be in black, have our faces wrapped, probably bring our big sticks and everything. I want to try and get enough smoke—smoke grenades, at least get enough smoke grenades made where uh, I can just hand them out, you know, give them to people . . . . Just make sure everyone has weapons against—the cops." However, the Defendant also stated that the purpose was "mostly to annoy the cops," and indicated that he did not want people to get hurt. When interviewed in August, the Defendant reiterated that he was not trying to kill or injure anyone, including law enforcement.

When contacted on March 31, 2016, the Defendant explained that he was collecting cardboard tubes in order to tape them together "into like, three at a time into thicker tubes so I can make like, smoke bombs and stuff." The Defendant also said that he was waiting to receive some dye to include in the devices that he was constructing and explained that they could be used tactically to evade the police. The Defendant explained that he was obtaining potassium nitrate from stump remover and that he was mixing 60% potassium nitrate with 40% sugars in order to build the devices. He said that he was planning on testing the devices but could not do it in the neighborhood because his neighbors will think "they're getting attacked or something when they see a whole bunch of smoke or something's on fire."

On May 1, 2016, law enforcement authorities served a search warrant on the Defendant's residence. During the search agents seized a suspected explosive/ incendiary device together with stump remover, cardboard tubes, fuse, color powder, model rocket engines, sulfur, magnesium, a kitchen scale, an electric grinder, a file, a measuring cup, and funnels. The Defendant was not arrested and consented to be interviewed.

When asked about the items found during the search, the Defendant said that he had conducted online research regarding different methods to build smoke bombs, and that his intent had been to potentially use them in "defensive" fashion against police during the May Day protest. Having researched the legality of smoke devices, he believed that they were not illegal to possess. He acknowledged, however, that the use of smoke bombs against police for purposes of intimidation was probably illegal. The Defendant said that he was not very successful in constructing the devices and only completed one device. He described the ingredients and ratios that he used. This was 60% potassium nitrate obtained from commercial stump remover, 40% sugar, and 10% baking powder "to slow the burn." He also added chemicals to color the smoke. He placed these ingredients into a cardboard tube from empty toilet paper rolls. He would then tape cardboard pieces to each end and insert a fuse through a hole in the cardboard. When asked about the device in his room, he admitted to pulling the fuse out of the device immediately after hearing agents knocking on the front door announcing search warrant. The Defendant admitted to a previous intent to deploy the device he made as a means to compromise the ability of the police to "attack" and arrest protestors during the May Day protest.

On July 24, 2016, federal authorities conducted a second interview with the Defendant. The Defendant again described the ingredients of the device seized from his bedroom. He clarified that the potassium nitrate came from stump remover. The Defendant identified the brand of stump remover that he used from photos of stump remover that had been seized during the search. The brand identified by the Defendant was Spectracide, which is manufactured by Chemsico, located in St. Louis, Missouri. The Defendant said that he purchased the fuse online from at a pyrotechnic website. The Defendant said that he had a friend purchase the dyes, which were manufactured in India, from Amazon.com and had them shipped to her residence at his request. The friend identified by the Defendant subsequently confirmed this statement and provided authorities with the e-receipt.

An ATF Explosives Enforcement Officer examined the device recovered from the Defendant's bedroom and concluded that when the fuse was inserted in the device it constituted an improvised incendiary-explosive device. Inserting and lighting the fuse would ignite the nitrate explosive mixture and produce intense flame and smoke. These "would be capable of starting fires, damaging property, and causing injury to persons nearby." The expert reported that the incendiary-explosive device met the definition of an incendiary device contained in 18 U.S.C. § 844(j).

6) Waiver of Inadmissibility of Statements:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States and proceedings under Fed. R. Crim. P. 11 for entry of a guilty plea, pursuant to Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410. This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions or his entry of a guilty plea in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7) The United States Agrees:

a) Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

b) Release Pending Sentencing:

The Government agrees to recommend the Defendant's release from custody pending sentencing.

8) United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

a) Base Offense Level:

The Defendant understands that the Court will determine the Base Offense Level applicable to the offense pursuant to U.S.S.G. § 2K1.3(a) following the completion of a Presentence Investigation Report and a determination of the Defendant's Criminal History.

b) Specific Offense Characteristics:

The Defendant understands that the Court may increase the Base Offense Level if the Court determines that the Defendant possessed any explosive material in connection with another felony offense. *See* U.S.S.G. § 2K1.3(b)(3). However, the parties have no agreement as to the applicability of this specific offense characteristic.

c) Victim-Related Adjustments:

The Defendant and the United States agree that the United States will not seek any victim-related adjustments pursuant to U.S.S.G. § 3A, including any terrorism-related adjustments under U.S.S.G. § 3A1.4.

d) Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than December 14, 2016, the United States will recommend that the Defendant receive a three (3) level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(b), if the Defendant's Adjusted Offense Level as determined by the Court is 16 or greater, and a two (2) level downward adjustment for

acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), if the Defendant's Adjusted Offense Level as determined by the Court is less than 16.

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

e) Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

9) Length of Imprisonment/Probation:

The United States and the Defendant agree to recommend that the Court impose a sentence that includes no period of imprisonment. In lieu of imprisonment, the United States and the Defendant agree to recommend that the Court impose a sentence of probation within a range of 3 to 5 years and are free to recommend any period of probation within that range. The United States and the Defendant agree to recommend any variance from the Sentencing Guideline range necessary to achieve this sentence. The United States and the Defendant are free to recommend any special conditions of probation that they deem appropriate.

10) Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

11) Supervised Release:

In the event that the Court imposes a sentence of incarceration in lieu of probation, the United States and the Defendant agree to recommend that the Court impose a 3-year term of supervised release. The United States and the Defendant are free to recommend any special conditions of supervised release that they deem appropriate.

12) Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13) Abandonment:

The Defendant agrees to abandon and relinquish all right, title and interest in the following, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment of the following: stump remover, 1 cold pack, 3 boxes of model rocket engines, 15 cardboard tubes, fuse, Niradhi color powder, crayons, file, measuring cup, check card, magnesium, funnels, 3 cardboard tubes, electric grinder, bag of sulfur, and the incendiary-explosive device, seized on May 1, 2016, by the Federal Bureau of Investigation pursuant to a federal search warrant.

The Defendant consents to the disposal of the items seized and waives any right the Defendant might otherwise have to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Federal Bureau of Investigation

might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the listed items. The Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the listed items, including any such claim for attorney fees and litigation costs. The Defendant agrees to hold the United States, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction of the listed items.

14) Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15) Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes, including any restitution order. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

16) Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORSMBY
United States Attorney

Timothy J. Ohms
Assistant U.S. Attorney

12/14/2016
Date

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in

any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

MELVIN THOMAS NEIFERT
Defendant

12/13/2016
Date

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

Jeremy B. Sporn
Attorney for the Defendant

12/13/2016
Date